**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 6 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TYRONE LAMONT BAKER, SR.,

    Plaintiff-Appellant,

v.

CHARLES SIMMONS, Secretary of
Corrections for the KDOC; ROBERT
HANNIGAN, Warden, Hutchinson
Correctional Facility; STEVEN
DECHANT, Deputy Warden,
Hutchinson Correctional Facility;
GERALD POSTIER, JR., Officer,
Unit Team; RUDY P. RODRIGUEZ,
Unit Team; JEFF CONN, Unit Team;
MICHAEL NELSON, Warden,
ElDorado Correctional Facility; DON
THOMAS, Deputy Warden, ElDorado
Correctional Facility; JOHN
TURNER, Deputy Warden,
Hutchinson Correctional Facility;
PRISON HEALTH SERVICES, a
Delaware corporation; MARVIN L.
METTSCHER, Health Services
Administrator, Hutchinson
Correctional Facility; DEBRA
WHEAT, Health Services
Administrator, ElDorado Correctional
Facility; LOUISIA OSBORNE,
Director of Nursing, Hutchinson
Correctional Facility; DENNIS
GOFF, Nurse, Hutchinson
Correctional Facility; NANCY
HUDSON, Nurse, Hutchinson
Correctional Facility; MARY
MCIVER, Nurse, Hutchinson

No. 02-3260
(D.C. No. 98-CV-3412-MLB)
(D. Kansas)

Correctional Facility; BRENDA
SHUFF, Nurse, Hutchinson
Correctional Facility; BELINDA
SAIZ, Records Clerk, Prison Health
Services; DURWARD A.
VANBEBBER, Chaplain, Hutchinson
Correctional Facility; ARAMARK
CORPORATION, a Pennsylvania
corporation; JUDY SIEBERT,
Aramark Employee; MARK
SHIMICK, Aramark Employee; BILL
GRAVES, Governor of Kansas,

Appellees-Defendants.

## ORDER AND JUDGMENT[*]

Before **SEYMOUR**, **MURPHY** and **O'BRIEN**, Circuit Judges.


After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Tyrone L. Baker, acting pro se,[1] appeals a decision of the district court awarding summary judgment to Defendants Aramark Corporation, Prison Health Services, Inc. and its employees Marvin Mettscher, Debra Wheat, Louisia Osborne and Dennis Goff, and Kansas Department of Corrections employees Charles Simmons, Steve Dechant, John Turner, Rudy Rodriguez, and Durward Van Bebber.[2] Mr. Baker also appeals the district court's entry of judgment for contract food service employees Judy Siebert and Mark Shimick, pursuant to a jury verdict in their favor. Finally, he appeals interlocutory orders of the district court denying his motion to supplement the complaint, his motions to recuse and his motions for appointment of counsel. Exercising jurisdiction under 28 U.S.C. § 1291 (2003), we affirm.

**BACKGROUND**

Mr. Baker has been in the custody of the Kansas Department of Corrections since 1989. He is serving four consecutive life sentences for two counts of first degree murder and two counts of aggravated kidnaping, together with a consecutive three to ten year sentence for one count of aggravated assault.

---

[1]We liberally construe a pro se appellate brief. *Ledbetter v. City of Topeka,* 318 F.3d 1183, 1187 (10th Cir. 2003). We note Mr. Baker proceeded pro se in the district court; we also liberally construe his pleadings there. *Id.*

[2]In a notice to this Court filed October 28, 2002, Mr. Baker dropped from his appeal ten of the original defendants in the action who were also awarded summary judgment by the district court. Pursuant to this notice, we order these individuals dismissed as parties.

On December 18, 1998, Mr. Baker filed a complaint in the United States District Court for the District of Kansas against twenty-three Defendants,[3] individually and in their official capacities, alleging violation of his Eighth Amendment right to be free from cruel and unusual punishment. He brought his complaint under 42 U.S.C. § 1983 (2003)[4] seeking damages, as well as declaratory and injunctive relief.

He alleged the Defendants demonstrated deliberate indifference to his serious medical needs. Mr. Baker claimed his neglected medical needs dated to 1992 and included hypoglycemia, hypertension, dental complaints, and problems with his feet, back, legs, fingers, and wrists. He also claimed the Defendants wrongfully barred him from medical care because he refused to sign an acknowledgment of his responsibility for an administratively required $2.00 copayment for medical services. The district court granted summary judgment in

---

[3]The Defendants included the Governor of Kansas, employees of the Kansas Department of Corrections, contracted food service workers at the Hutchinson Correctional Facility, and Prison Health Services, Inc., which provided medical services to the Kansas Department of Corrections, together with a number of its employees. Mr. Baker also sued twenty-six unnamed "Does" who were never otherwise identified or served.

[4]"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983 (2003).

favor of all Defendants, except Ms. Siebert and Mr. Shimick; their cases proceeded to a jury trial where a verdict, and subsequent judgment, was entered in their favor. From this order, and several interlocutory orders, Mr. Baker appeals.

**DISCUSSION**

**I. Entry of Judgment**

We review the district court's grant of summary judgment de novo, applying familiar legal standards. *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1326 (10th Cir. 1999), *cert. denied,* 528 U.S. 815 (1999).

At the outset, we note "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Stidham v. Peace Officer Stds. & Training,* 265 F.3d 1144, 1156 (10th Cir. 2001) (quoting *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989)). Thus, summary judgment in favor of all Defendants in their official capacities was appropriate as to the damage claims.[5]

Mr. Baker's claims that Aramark Corporation and Prison Health Services, Inc. were vicariously liable for the actions of their employees at the prison is also

---

[5]Mr. Baker also sued Defendants in their official capacities for injunctive and declaratory relief. While Defendants named in their official capacities are not immune from suit for injunctive relief under 42 U.S.C. § 1983, *Stidham v. Peace Officer Stds. & Training,* 265 F.3d 1144, 1156 (10th Cir. 2001), Mr. Baker's claims for injunctive relief, as well as his claims for declaratory relief, are without merit for the reasons discussed below.

without merit. "[C]orporate defendants cannot be held vicariously liable for the acts of their servants under section 1983." *Dickerson v. Leavitt Rentals,* 995 F.Supp. 1242, 1247 (D. Kansas 1998), *aff'd,* 153 F.3d 726 (10th Cir. 1998), *cert. denied,* 525 U.S. 1110 (1999); *see also, DeVargas v. Mason & Hanger-Silas Mason Co., Inc.,* 844 F.2d 714, 722 (10th Cir. 1988), *cert. denied,* 498 U.S. 1074 (1991). Accordingly, summary judgment for Aramark Corporation[6] and Prison Health Services, Inc. was appropriate .

The district court correctly granted summary judgement to Kansas Department of Corrections employees Charles Simmons (Secretary of Corrections of the State of Kansas), Steve Dechant (Deputy Warden, Hutchinson Correctional Facility) and John Turner (Deputy Warden, Hutchinson Correctional Facility). Mr. Baker's complaints against these individuals in their supervisory roles, even liberally construed, are devoid of any allegation affirmatively linking them to a subordinate's alleged deliberate indifference to his medical needs. Mr. Baker's allegations are, at best, conclusory. "[A] supervisor is not liable under § 1983 for

---

[6]In its motion for summary judgment, Aramark Corporation submitted an affidavit in which it denied a contractual relationship with the State of Kansas and denied employing Ms. Siebert or Mr. Shimick. We agree with the district court that Mr. Baker was unable to rebut this affidavit, and as such, Aramark Corporation was not a proper Defendant. Instead, Aramark Correctional Services, Inc., a different corporate entity, contracted with the State of Kansas to provide food services to the Kansas Department of Corrections and employed Ms. Siebert and Mr. Shimick.

the actions of a subordinate unless an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation or his failure to supervise." *Grimsley v. MacKay,* 93 F.3d 676, 679 (10th Cir. 1996) (quotation and citation omitted).

Mr. Baker's claim of error emanating from the favorable jury verdicts for Ms. Siebert and Mr. Shimick–contract food service workers at the Hutchinson Correctional Facility who allegedly acted with deliberate indifference to his medical needs by failing to adhere to his prescribed medical diet–must also fail. On appeal, Mr. Baker points to no error in the jury trial and offers no authority or cognizable argument for overturning the verdicts. Instead, he merely seeks to retry his case on appeal. We will not consider "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *Murrell v. Shalala,* 43 F.3d 1388, 1390 n.2 (10th Cir. 1994) (quotation and citation omitted). Therefore, judgment for Ms. Siebert and Mr. Shimick is affirmed.

"A prison official violates an inmate's clearly established Eighth Amendment rights if he acts with deliberate indifference to an inmate's serious medical needs--if he knows of and disregards an excessive risk to inmate health or safety." *Garrett v. Stratman,* 254 F.3d 946, 949 (10th Cir. 2001) (quotation and citation omitted). The test contains both an objective and subjective component. A "serious medical need" is objectively established by proof the inmate's

condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotations and citations omitted). The subjective aspect of the test, "deliberate indifference," is established where "the prison official both was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quotation and citations omitted). "[A] delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Id.* at 950 (quotation and citation omitted). "[A]ccidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a medical condition do not constitute a medical wrong under the Eighth Amendment." *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir. 1980), *cert. denied,* 450 U.S. 1041 (1981). Nor does a difference of opinion between an inmate and medical staff as to the need for or adequacy of treatment "rise to the level of a constitutional violation." *Johnson v. Stephan,* 6 F.3d 691, 692 (10th Cir. 1993).

With these principles in mind, we have carefully reviewed the record, including a *Martinez* report ordered by the district court.[7] We adopt the reasoning

---

[7]In *Martinez v. Aaron,* 570 F.2d 317 (10th Cir. 1978), we approved the practice of the district court to order preparation of a report by the prison administration, to be included in the pleadings in cases where a prisoner has filed

of the district court and agree with its conclusion that Mr. Baker failed to state a cognizable Eighth Amendment claim against the remaining Kansas Department of Corrections employees (Officer Rodrigues and Chaplain VanBebber) or Prison Health Services, Inc. employees (Marvin Mettscher, Debra Wheat, Louisia Osborne and Dennis Goff). Neither health care providers nor corrections officials have barred Mr. Baker from seeking medical treatment.[8] In fact, the record contains abundant evidence he has obtained treatment for his medical needs since 1992. At best, he disagrees with his health care providers and corrections officials as to the recommended treatment regimen for his stated ailments. Such complaints

suit alleging a constitutional violation. "Thus, the state prison administration, at a level where the facts can be adequately developed, first examines and considers the incident, circumstances, and conditions which gave rise to the asserted cause of action and develops a record before the court must proceed beyond the preliminary stages." *Id.* at 320.

[8]Mr. Baker claimed Belinda Saiz, records clerk for Prison Health Services, Inc., and Officer Gerald Postier, Jr. of the Kansas Department of Corrections, both posted to the Hutchinson Correctional Facility, barred him from medical care on May 29, 1998 (attention to his feet and a medical refill) because he refused to sign a paper acknowledging his responsibility for an administratively required $2.00 copayment for medical services. The copayment only applied to the initial visit to sick call for a specific complaint or condition and, at that, only to visits initiated by the inmate. Furthermore, the regulation provided, "No inmate shall be refused medical treatment for financial reasons." *See* KAN. ADMIN. REGS. 44-5-115(c) (2000). Mr. Baker also claims Kansas Governor Bill Graves committed a constitutional violation by promulgating this administrative regulation. These claims are defeated by Mr. Baker's requested dismissal of Ms. Saiz, Officer Postier and Governor Graves from this appeal. In any event, the regulation is clear that an inmate's inability to pay the copayment does not deprive him of access to medical services.

are not of constitutional magnitude.  *See Johnson,* 6 F.3d at 692.

## II.  Interlocutory Orders

Mr. Baker raises other issues in his brief which the district court disposed of by interlocutory order before entry of judgment for the Defendants.  We will consider those issues, even though not specifically identified in the notice of appeal,  under the rule that "a notice of appeal which names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment." *McBride v. Citgo Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002).  Mr. Baker appeals from orders denying his motion to supplement his complaint, his motions that the district court judge recuse himself, and his motions for appointment of counsel.

## A.  Denial of Motion to Supplement Complaint

On March 20, 2000, fifteen months after filing his complaint, Mr. Baker filed a motion, correctly construed by the district court as brought under Fed. R. Civ. P. 15(d), to supplement his complaint by adding claims against nine new defendants.  Mr. Baker characterized the new claims as the "same in nature to the violations alleged in the complaint filed on December 18, 1998."  The district court denied the motion to supplement the complaint, reasoning the case would "never be resolved if plaintiff is permitted to continuously 'update' his claims and add additional parties . . . ."  ROA, Vol. II, Doc. 90, p.4.

Whether or not to grant a motion to supplement the pleadings lies within the "broad discretion" of the district court. *Walker v. United Parcel Serv., Inc.,* 240 F.3d 1268, 1278 (10th Cir. 2001). We are also mindful of the admonition that the Federal Rules of Civil Procedure "be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. In this light, and after a careful review of the extensive record, we conclude the district court did not abuse its discretion in denying Mr. Baker's motion to supplement the complaint.

## B. Denial of Motions for Change of Judge

On July 27, 2000, shortly after the district court denied his motion to supplement the complaint, Mr. Baker filed his first motion to recuse under 28 U.S.C. § 144 (2003). He later supported this motion with an affidavit of prejudice.[9] The district court denied the motion on the grounds Mr. Baker's affidavit of prejudice was insufficient. On November 2, 2001, Mr. Baker filed a second motion for change of judge, supported by another affidavit of prejudice. The district court also denied this motion on the grounds it was a forbidden second

---

[9]"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. . . . A party may file only one such affidavit in any case." 28 U.S.C. § 144 (2003).

affidavit of prejudice in the same case and, again, for insufficiency.

Mr. Baker's allegations of bias or prejudice, as expressed in his two affidavits, generally consist of remarks made by the judge in the course of the proceedings. Mr. Baker believes those remarks to have been made in hostility to him and to the detriment of his claims for relief.[10] On this point, we turn for guidance to the United States Supreme Court:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make a fair judgment impossible.

*Liteky v. United States,* 510 U.S. 540, 555 (1994)(emphasis in original).

We review the denial of a motion to recuse for abuse of discretion. *United States v. Burger,* 964 F.2d 1065, 1070 (10th Cir. 1992), *cert. denied*, 507 U.S. 1033(1993). "Under § 144, the affidavits filed in support of recusal are strictly

---

[10]For example, Mr. Baker complains the presiding judge addressed him in a condescending manner, belittled his lack of legal skills, improperly commented on the propriety of naming certain persons as Defendants, exhibited bias by alluding to his claims as a "laundry list of complaints," and remarked on the tragic irony of a convicted double murderer enjoying "better access to health care than many law-abiding citizens, not to mention access to a federal court to make sure that his rights as a convict are not violated." ROA, Vol. 3, Doc. 128, pp. 22-23

construed against the affiant and there is a substantial burden on the moving party to demonstrate that the judge is not impartial." *Id*. "To sustain disqualification under § 144, supra, there must be demonstrated bias and prejudice of the judge arising from an extrajudicial source which renders his trial participation unfair in that it results in an opinion formed . . . on some basis other than that learned from his participation in the case." *United States v. Bray,* 546 F.2d 851, 859 (10th Cir. 1976) (quotation and citation omitted). Adverse rulings by a judge in a case are not grounds for disqualification. *Id.* at 857. While all factual allegations in an affidavit of prejudice must be taken as true, the challenged presiding judge must rule on the affidavit's legal sufficiency. *Id.*

Here, the presiding judge's comments clearly derive from the litigation itself and Mr. Baker's past criminal history rather than from an extrajudicial source. As to whether they evidence "such a high degree of favoritism or antagonism as to make a fair judgment impossible," we think not. *Liteky,* 510 U.S. at 555. The challenged remarks were no more than observations of the proceedings. While uttered with some apparent passion, they do not demonstrate bias, but merely reflect the reality of the proceedings. Mr. Baker did not meet his substantial burden to establish partiality.

## C. Denial of Motions for Appointment of Counsel

Mr. Baker's final assignment of error involves his two motions for

appointed counsel. The district court denied his first motion with the explanation: "Given the narrow issues involved and plaintiff's failure to request a jury trial, the court believes that the interests of justice do not require appointment of counsel for plaintiff." ROA, Vol. 4, Docket 135, p.8. The magistrate judge granted Mr. Baker's second motion for appointment of counsel for the limited purpose of aiding him in identifying and securing the appearance of witnesses at trial on his behalf. As best we can decipher his argument, Mr. Baker alleges error in limiting the role of appointed counsel.

"There is no constitutional right to appointed counsel in a civil case." *Durre v. Dempsey,* 869 F.2d 543, 547 (10th Cir. 1989). However, "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1) (2003). "The decision to appoint counsel is left to the sound discretion of the district court." *Engberg v. Wyoming,* 265 F.3d 1109, 1122 (10th Cir. 2001), *cert. denied,* 535 U.S. 1001 (2002). A district court's denial of counsel "will not be overturned unless it would result in fundamental unfairness impinging on due process rights." *Williams v. Meese,* 926 F.2d 994, 996 (10th Cir. 1991)(citation and quotations omitted). "In determining whether to appoint counsel, the district court should consider a variety of factors, including the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims."

*Id.*

While the preferred practice is for the district court to fully explain its reasons for denying appointment of counsel, to the extent the district court did not do so here, "we may independently examine the propriety" of a request for appointment of counsel. *See Rucks v. Boergermann,* 57 F.3d 978, 979 (10th Cir. 1995). Having thoroughly examined the record and considered the *Meese* factors ourselves, we conclude the district court did not abuse its discretion in failing to appoint counsel to assist Mr. Baker.

**CONCLUSION**

For the reasons given, we AFFIRM the judgment of the district court.

**Entered by the Court:**

**TERRENCE L. O'BRIEN**
United States Circuit Judge